

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

**DAVID W. HERCHER**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1538

COLLIN M. COLE
LAW CLERK

DORIA D. ARNTSEN
JUDICIAL ASSISTANT

March 12, 2018

VIA ECF ONLY

NOT FOR PUBLICATION

Natalie C. Scott
Alexzander C.J. Adams

Subject: Robert E. Merrill-Colberg v. Bianca Renee Schmunk
Adversary Proceeding No. 17-03007-dwh

Counsel:

On September 29, 2017, I held the trial in this adversary proceeding by plaintiff, Robert E. Merrill-Colberg, against defendant, Bianca Renee Schmunk.

I write to explain my judgment for Schmunk and against Merrill-Colberg, determining that her debt to him is dischargeable and was discharged by the judgment in this case. This letter constitutes my findings of fact and conclusions of law.

### I. Facts

In general, I find both Merrill-Colberg and Schmunk to be credible witnesses. After listening to their testimony, I have no reason to doubt their sincerity. But I find that they have limited sophistication with respect to financial transactions such as the one at issue here. Many of the issues involved in this action appear to stem from mutual misunderstandings about insurance and secured transactions.

#### A. *Merrill-Colberg lent and sold a car to Schmunk.*

The parties are former social acquaintances. They would meet regularly at the Cottage House bar in Springfield, where Schmunk then worked, and attend Oregon Ducks football games together.

When Schmunk's car broke down, Merrill-Colberg allowed her to borrow his 1995 Honda Accord. In February 2012, she bought the car from him. They signed a contract while at the Cottage House. Although there was some dispute on this point at trial, I find that Exhibit 5 is a true and accurate copy of the contract as it was signed on that night. They had been drinking alcohol before they signed the contract, but I find that they were sober enough to understand its terms.

The contract required Schmunk to insure the car "against all risks" and to furnish proof of insurance to Merrill-Colberg.[1] On the day of the purchase, they went together to a DMV officer to arrange for him to transfer the car's title to her. She presented to the DMV the evidence of the insurance that Oregon law requires a car owner to maintain: liability insurance, not casualty (or comprehensive) insurance. Merrill-Colberg, who was with her at the DMV, did not ask to see evidence of her insurance that day or at any other time. She testified that at some point before the accident that totaled the car, she told him that she was carrying only liability insurance because the cost of "full coverage . . . was not worth it."

After buying the car, she tried to obtain comprehensive insurance, but she ultimately did not do so because it was too expensive, given the poor condition of the car.

Merrill-Colberg never asked for proof of Schmunk's insurance. Instead, he relied on her representations that she "had insurance."

### B.   *Schmunk was in an accident that totaled the car.*

In 2013, Schmunk was in a serious car accident. The car was a total loss. Neither Merrill-Colberg nor she made any effort to recover it.

After the accident, Schmunk told Merrill-Colberg that he would be paid from her insurance.

Eventually, Schmunk discovered that she could not recover through her insurance, because she had only liability insurance. She hired personal-injury attorney Ralph Rayburn to pursue a lawsuit against the driver of the other car.

Schmunk testified that, after talking to Rayburn, she understood that the lawsuit against the other driver would take care of all the losses that resulted from the accident, including the loss of the car. Rayburn testified that he did not remember the details of his conversation with her, but he had said nothing to suggest to her that he would pursue a property-damage claim against the other driver. I find that Schmunk honestly, though unreasonably, believed that the resolution of the personal-injury claim would also result in payment to Merrill-Colberg for his interest in the destroyed car.

Contrary to Schmunk's understanding, the personal-injury lawsuit did not include a property-damage claim. Merrill-Colberg had no security interest or interest of any kind in the personal-injury cause of action or any proceeds from it.

Schmunk told Merrill-Colberg that he would get his money through the settlement of the personal-injury lawsuit. She made this representation several times between the time of the accident and the time of his small-claims action against her. Based on her testimony, I find that she honestly intended to pay him from the proceeds of the personal-injury settlement.

---

[1] Plaintiff's (Pl.) Ex. 5 at 3.

### C. Merrill-Colberg sued and obtained a small-claims judgment against Schmunk.

Expecting to be paid from Schmunk's settlement, Merrill-Colberg delayed taking any action against her to recover her debt to him. Finally, in 2015, he filed a small-claims action against her and obtained a judgment for $2,677.85, with postjudgment interest at 9 percent per year.[2] He considered initiating a garnishment, but chose not to do so because of the perceived cost. The parties no longer communicated after the small-claims action.

Once Merrill-Colberg obtained a judgment, Schmunk decided it was no longer necessary to pay him from the proceeds of the settlement.

Schmunk received the settlement proceeds in January 2016. She signed a closing statement prepared by Rayburn.[3] The closing statement provided for payments to a litigation lender, which had advanced money to her, to State Farm for its "PIP Lien," and to Rayburn for his contingency fee, with the balance of $4,700 to her.

Schmunk put some of the settlement proceeds into her boyfriend's bank account. She admitted that she did this because she was afraid that creditors (not including Merrill-Colberg) would garnish her account.

### D. Schmunk was in a second car accident.

Schmunk was in a second car accident in 2014 in a different car, which was also the subject of a personal-injury settlement.

### E. Schmunk filed for bankruptcy.

Schmunk filed her chapter 7 petition, initiating this case, on October 12, 2016. The court dismissed her case for failure to file necessary documents but reopened it on November 10, 2016. She listed Merrill-Colberg as a creditor[4] and scheduled the settlement of the second personal-injury lawsuit as an asset.[5]

There are some inaccuracies in Schmunk's statement of financial affairs. For example, she said that she had not been a party to any lawsuit within the year before her bankruptcy,[6] even though during that period she had been a defendant in Merrill-Colberg's small-claims action and a plaintiff in two personal-injury lawsuits. She also failed, when asked if she had any nonemployment-related income, to list the personal-injury settlements.

Although these inaccuracies are troubling and demonstrate carelessness and a lack of the diligence that the Bankruptcy Code requires of debtors, I find no evidence that Schmunk intended to defraud anyone by omitting the information. With respect to the omitted personal-injury settlements, she credibly testified that she didn't understand that personal-injury damages are considered income. Moreover, it is implausible that she would attempt to defraud creditors by

---

[2] Pl. Ex. 8 at 3.
[3] Pl. Ex. 12.
[4] Pl. Ex. 2 at 21.
[5] Pl. Ex. 2 at 11.
[6] Pl. Ex. 2 at 35.

omitting from one document (the statement of financial affairs) information that is included in another document (the schedule of assets). I find instead that it was an inexcusable but nonfraudulent mistake.

The meeting of creditors in Schmunk's case was held on November 16, 2016. Merrill-Colberg attended. She testified that the Bank of America savings account she listed on her schedules belonged to her boyfriend.[7]

The trustee and Merrill-Colberg asked Schmunk questions about the personal-injury settlement. She explained that she at first intended to pay him from her settlement proceeds, but changed her mind, on advice of her attorney, when Merill-Colberg obtained his judgment against her. The trustee discussed the situation with him, advised him to hire a lawyer if he wanted to pursue a nondischargeability action, and advised him that his deadline to do so was 60 days from the meeting of creditors.[8]

### F. Merrill-Colberg initiated this action.

On January 10, 2017, Merrill-Colberg, acting without a lawyer, filed a letter with the cover sheet required for an adversary proceeding. The letter described Schmunk's debt to him, her statements to him that he would be paid out of the settlement proceeds, and the events of the meeting of creditors.

On January 23, the court entered an order granting Schmunk a chapter 7 discharge.

On February 21 and March 14, I held pretrial conferences in this action. At the February conference, I told him that his letter did not appear to state a claim on which I could grant relief. I warned that I would dismiss the complaint if he did not either amend it or address my concern about its apparent insufficiency. At the March conference, he said he intended to file an amended complaint.

On March 22, Merrill-Colberg filed his amended complaint, in which he stated claims for excepting his debt from discharge and seeking denial of Schmunk's discharge.

After attorneys appeared for Merrill-Colberg and Schmunk, she filed a motion to dismiss this action. Although she sought dismissal of the discharge-objection claim, she did not base her motion on the fact that she has already received her discharge. I denied the motion to dismiss with respect to the discharge-objection claim.

On July 12, he filed a second-amended complaint. She answered, and I held the trial on September 29. I called for supplemental briefing to address my concern that entry of her discharge prevented me from determining the discharge-objection claim.

---

[7] Pl. Ex. 4 at 4.
[8] Pl. Ex. 4 at 14-19.

**II.     Analysis**

    *A.     Jurisdiction*

This court has jurisdiction over this action under 28 U.S.C. §§ 157 and 1334. This action is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J). Neither party has disputed this court's constitutional authority to enter a final judgment in this action.

    *B.     Merrill-Colberg's claim is not excepted from discharge under 11 U.S.C. § 523(a).[9]*

Merrill-Colberg had a security interest in the car. He could have, but chose not to, insist on proof that she had obtained casualty insurance. He also could have, but chose not to, reclaim the car, presumably because its totaled value, less storage charges, was not worth the trouble. After Schmunk's accident in which the car was totaled, she pursued litigation, but only for personal injuries to her and not for damage to the car. He had no security or other property interest in the settlement of that litigation. Having abandoned the totaled car, he became a general creditor of her with no greater claim to proceeds of the settlement than any other of her creditors. The small-claims judgment that he obtained did not change that fact. He could have taken collection action before her bankruptcy, but he chose not to do so.

As recently as his trial memorandum, Merrill-Colberg also argued that his debt was nondischargeable because it was for a willful and malicious injury because she allowed the destruction of his collateral. The facts do not support this argument. There is no evidence that she acted willfully or maliciously. He now appears to have abandoned this argument, but to the extent it is still before me, I reject it. This claim largely overlapped with the fraud claim. I address the fraud-related issues below.

Merrill-Colberg seeks a determination of nondischargeability based on false representations or actual fraud. He argues that Schmunk defrauded him in two ways: first, by falsely telling him, when she bought the car, that she had insurance on it or would obtain such insurance, and second, by inducing him to refrain from taking collection action by telling him he would be paid through the personal-injury settlement.

For either of these theories of nondischargeability, he must prove the following elements: (1) Schmunk made a misrepresentation; (2) she knew the representation was false; (3) she intended to deceive him; (4) he justifiably relied on the representation; and (5) the representation was the proximate cause of the debt.

        **1.     Schmunk did not defraud Merrill-Colberg at the time of the sale.**

I have found that Schmunk's statement that she already had insurance before buying the car was based on her misunderstanding of the nature of liability insurance. Merrill-Colberg hasn't shown the necessary intent to deceive him by falsely representing that she had pre-arranged for casualty insurance.

---

[9] Unless otherwise specified, section references are to title 11.

### 2. Schmunk did not fraudulently induce Merrill-Colberg to refrain from taking collection action.

Again, I have found that Schmunk honestly, albeit wrongly, believed that her debt to Merrill-Colberg would be resolved through the personal-injury settlement.

I have also found that, when Schmunk made representations to Merrill-Colberg that he would be paid from the settlement, she intended to pay him and only later decided not to pay him. I find that she decided not to pay him after he sued her because she honestly that he would be paid by collecting his judgment. Therefore, I conclude that he has not shown the requisite fraudulent intent.

Additionally, Merrill-Colberg has not shown that his reliance on Schmunk's representation gave rise to any debt. I assume, without deciding, that the facts that he alleges would give rise to liability under Oregon law, though neither party has addressed this issue. But he must prove that, had it not been for her alleged misrepresentation, he would have avoided the injury.

Merrill-Colberg argues that he would have taken speedier collection action if he had not believed that Schmunk would pay him voluntarily. But he offered no evidence of damages from forbearance. She testified credibly, and I find, that she did not make any representations to him about payment after he sued her. And he testified that his decision not to garnish after obtaining his judgment in November 2015 for the nine months preceding her bankruptcy in October 2016 was motivated by the perceived cost of garnishment.

For all these reasons, I conclude that Schmunk's debt to Merrill-Colberg is not excepted from discharge.

### C. *Merrill-Colberg is not entitled to vacatur or revocation of Schmunk's discharge or pursuit of a discharge-denial action under section 727.*

As I noted at trial, the court entered Schmunk's discharge on January 23, 2017.[10] Although Merrill-Colberg's letter that I have treated as his initial complaint had been filed on January 10, his first and second amended complaints, in which he asserted objections to her discharge, were yet to be filed. These circumstances raise the question whether I have the authority to deny a discharge that has already been entered and not subsequently vacated. For the reasons that follow, I conclude that I do not have that authority. I further conclude that the circumstances do not permit me to vacate her discharge.

### 1. The framework of section 727 and Federal Rule of Bankruptcy Procedure 4004

To address Merrill-Colberg's section 727 claim, I must analyze the statutory and procedural framework under which bankruptcy courts grant, deny, and revoke discharges. That

---

[10] Case No. 16-33918-dwh7, docket entry no. 25.

framework reflects a balance between the policy of denying discharge to certain dishonest debtors and the need for finality.

### *(a)    The substantive grounds for denying and revoking discharges*

Section 727(a) begins, "[t]he court shall grant the debtor a discharge, unless—," and the following 12 numbered subparagraphs state the circumstances under which the court will not enter a discharge.[11] Some are procedural or technical, such as the debtor's failure to complete a financial-management course,[12] the fact that the debtor obtained a discharge in another recently filed case,[13] or the fact that the debtor is a corporation.[14] Other bases for denying discharge relate to the debtor's misconduct, either during the case, during a previous case, or in the year leading up to the case.[15]

The misconduct-related bases for denying discharge reflect Congress's desire to limit the bankruptcy discharge to "honest but unfortunate" debtors. A variety of forms of dishonesty, fraud, or failure to cooperate can support denial of discharge. Courts will deny a discharge to a debtor who wrongfully transfers or conceals her own property before bankruptcy or the estate's property during the case,[16] unjustifiably fails to keep records of her finances,[17] makes fraudulent misrepresentations during the case or obstructs its administration,[18] or disobeys court orders.[19]

In comparison to the foregoing list, there are significantly fewer bases on which a discharge may be revoked. Discharge revocation requires proof that the debtor has secreted property rightfully belonging to the estate,[20] disobeyed a court order,[21] obstructed a United States trustee audit,[22] or obtained her discharge by fraud.[23] The last basis is the broadest, but even there, the objector must prove that the fraud was causally linked to the entry of discharge (not just that fraud was "in the air" during the case)[24] and that the objector was unaware of the fraud before discharge.[25] Sloppy record-keeping, prepetition mismanagement of assets, and in some circumstances even fraud cannot form the basis for discharge revocation, even though they might have formed the basis for a timely objection to the discharge's entry.

From the above I conclude that Congress made a substantive as well as procedural distinction between discharge denial and discharge revocation. By design, it is more difficult to revoke a discharge than it is to deny it in the first instance. This conclusion is consistent with the general policy favoring finality. Although it may sometimes allow a dishonest debtor to get away

---

[11] Section 727(a)(1)-(12).
[12] Section 727(a)(11).
[13] Section 727(a)(9).
[14] Section 727(a)(1).
[15] Section 727(a)(2)-(7).
[16] Section 727(a)(2).
[17] Section 727(a)(3), (5).
[18] Section 727(a)(4).
[19] Section 727(a)(6).
[20] Section 727(d)(2).
[21] Section 727(d)(3).
[22] Section 727(d)(4).
[23] Section 727(d)(1).
[24] *In re Nielsen*, 383 F.3d 922, 925 (9th Cir. 2004).
[25] Section 727(d)(1).

with her dishonesty because no one timely objected, that is part of the design of the statute. The purpose is not to reward fraudsters but to prohibit objectors from sleeping on their rights. Time is of the essence in bankruptcy, and a creditor who wishes to prevent discharge must act promptly or not at all. Only if the debtor's misconduct occurred or came to light after discharge can creditors seek discharge revocation.

### (b) The procedure for entry of discharge

Federal Rule of Bankruptcy Procedure 4004 sets out the process by which courts enter discharges.

First, a complaint objecting to discharge must be filed within 60 days after the first meeting of creditors.[26] After the 60-day period expires, the court must enter the discharge "forthwith" unless one of a series of obstacles prevents its entry. The court will not enter discharge if the debtor is not an individual,[27] if the debtor has waived the discharge,[28] or if the debtor has not paid her filing fee[29] or completed a financial-management course.[30]

If none of the technical obstacles to discharge is present, Rule 4004(c) requires the court to withhold the discharge if there is pending any of several types of matters, including a complaint or motion objecting to discharge,[31] a motion to extend time to file either an objection to discharge or motion to dismiss,[32] or a motion to delay or postpone the discharge.[33] Thus, if an objector has commenced an action seeking denial of discharge, the court will refrain from entering discharge until the action is complete. If the objector prevails, the court will enter a judgment denying discharge; if the debtor prevails, the court will enter the discharge.

These procedures again highlight the difference between the technical and the misconduct-related obstacles to discharge. The technical obstacles are self-executing. The rules provide for no process to determine whether the debtor is an individual or has paid her fees and filed her financial-management-course certification—presumably, these facts will always be obvious from the case file, and the court will act accordingly. Likewise, if the debtor is discharge-ineligible because of a recent discharge,[34] that fact will also be apparent from court records. But the debtor's misconduct will not be apparent from the record and must be established through a full-dress adversary proceeding.[35] Misconduct is not a self-executing bar to discharge; it is a fact that must be litigated and proved before it has any legal effect.

---

[26] Fed. R. Bankr. P. 4004(a).
[27] Fed. R. Bankr. P. 4004(c)(1)(A).
[28] Fed. R. Bankr. P. 4004(c)(1)(C).
[29] Fed. R. Bankr. P. 4004(c)(1)(G).
[30] Fed. R. Bankr. P. 4004(c)(1)(H).
[31] Fed. R. Bankr. P. 4004(c)(1)(B).
[32] Fed. R. Bankr. P. 4004(c)(1)(E).
[33] Fed. R. Bankr. P. 4004(c)(1)(I), (L).
[34] Section 727(a)(7), (8).
[35] Fed. R. Bankr. P. 7001(4) (requiring an adversary proceeding to determine an objection to discharge).

### 2. I do not have the authority to vacate Schmunk's discharge.

Based on the foregoing sketch of the substance and procedure of granting and denying discharge, I must determine the extent of a bankruptcy court's power to entertain a complaint seeking denial of discharge after the discharge has been entered.

#### *(a)* ***Kontrick*** *does not apply to a request to revoke a discharge.*

In the Supreme Court's 2004 decision in *Kontrick v. Ryan*,[36] it held that the 60-day time limit for objecting to discharge is not jurisdictional. Instead, the deadline is a "claim-processing rule" and may be waived if not raised before a decision on the merits.[37] Merrill-Colberg argues that *Kontrick* affirmed a bankruptcy court's authority to entertain postdischarge discharge objections.

Merrill-Colberg reads too much into *Kontrick*. There, the creditor timely commenced a discharge-objection action, and presumably for that reason, there is no indication that the bankruptcy court entered a discharge before reaching a decision on the discharge-objection action. The issue that the Court addressed was whether, due to the passage of the 60-day limitation period before the plaintiff amended his complaint to add the claim on which he prevailed, the bankruptcy court lacked jurisdiction to try the discharge objection, given that the debtor had not raised the limitation issue until after the bankruptcy court had granted the creditor summary judgment. The decision focuses solely on the expiration of the 60-day period; at no point did the Court discuss what effect, if any, the actual entry of discharge would have had.

#### *(b)* *I cannot deny a discharge that has already been granted.*

As discussed in part II.C.1 above, there is a substantive as well as a procedural distinction between denial and revocation of discharge. Denial of discharge is a prospective remedy; it must relate to a discharge that the debtor has not yet obtained. A bankruptcy court cannot "deny" a discharge that is already in place, any more than a court can "enjoin" a past transaction.

At trial, I expressed my concern that the existing discharge rendered Merrill-Colberg's section 727(a) claim moot in the jurisdictional sense. Whether the entry of discharge creates a truly jurisdictional barrier to entertaining a discharge-denial complaint is a difficult question, because the term "jurisdictional" is susceptible to multiple interpretations and occasional misuse.[38] On one hand, Schmunk already has her discharge and is not seeking another, so any judgment purporting to deny her discharge would be a nullity and would not accord any meaningful relief. On the other hand, the court clearly retains jurisdiction to consider issues relating to the discharge, such as a request to revoke it or, as discussed below, to vacate it.

Ultimately, I need not decide whether the issue is one of jurisdictional mootness or simply practical impossibility. What matters is that I cannot grant the prospective remedy of denying Schmunk's discharge unless I first vacate the discharge she already has.

---

[36] 540 U.S. 443 (2004).
[37] *Id.* at 459-60.
[38] *Kontrick*, 540 U.S. at 454-55.

### 3. Rule 60 does not support revocation of Schmunk's discharge.

At trial and in his posttrial memorandum, Merrill-Colberg requested that I vacate Schmunk's discharge. He has not filed a freestanding motion requesting that relief, but because the relief he seeks in this action implicitly requires that I first vacate the discharge, I conclude that the issue is properly before me.

#### *(a)  The court's ability to vacate discharges*

Federal Rule of Bankruptcy Procedure 9024 incorporates Federal Rule of Civil Procedure 60, with the caveat that "a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by section 727(e) of the Code." This caveat does not apply in this case, because Merrill-Colberg made his request within the section 727(e) time limit, but it highlights the need to limit Rule 60 relief to prevent it from overriding the Code's strict limitations on discharge revocation.

The Ninth Circuit's 1993 *Cisneros* decision[39] illustrates the relationship between statutory revocation and vacatur under Rule 60. There, the bankruptcy court had granted the debtor a chapter 13 discharge on the mistaken belief that he had completed his plan payments. A creditor then asked the court to vacate the discharge because its claim had gone unnoticed and unpaid by the trustee.[40] The Ninth Circuit held that vacatur was appropriate. The discharge had been entered on the mistaken assumption that the debtor had completed his plan payments. Rule 60 permitted the court to correct that mistake. Section 1328(e), which permits revocation of a chapter 13 discharge only for fraud, did not prohibit the court from vacating a discharge entered by mistake, even in the absence of the debtor's fraud.[41]

Some of the language in *Cisneros* could be read to suggest that a bankruptcy court can always vacate a discharge if it subsequently discovers facts that would have prevented entry of the discharge. For good reason, another judge of this court has viewed *Cisneros* as "a reaffirmation of a court's inherent power to correct its own clerical errors,"[42] not blanket authority to circumvent the time limits of section 727 and Rule 4004. In the terms that I used in part II.C.1 above, *Cisneros* permits courts to vacate a discharge entered in violation of a self-executing, technical bar.

In a chapter 13 case, the debtor's completion of plan payments is a self-executing prerequisite to discharge,[43] like the requirement to complete a financial-management course and pay the filing fee. If the court mistakenly entered a discharge for a debtor who had not paid his filing fee, *Cisneros* and common sense dictate that I could vacate the discharge without regard to section 727(d). Under Rule 4004(c)(1)(B), the pendency of a discharge objection is also a self-executing bar—the court must await resolution of the objection before entering the discharge. So too, if the court mistakenly entered discharge while a proper section 727(a) objection was pending, I could vacate the discharge and resolve the objection.

---

[39] *In re Cisneros*, 994 F.2d 1462 (9th Cir. 1993).
[40] *Id.*, 994 F.2d at 1464.
[41] *Id.*, 994 F.2d at 1467.
[42] *In re Ford,* 159 B.R. 590, 593 (Bankr. D. Or. 1993).
[43] Section 1328(a).

### *(b) Schmunk's discharge was not entered by mistake.*

On the day the court entered Schmunk's discharge, Merrill-Colberg's initial complaint (charitably interpreting the letter as a complaint) was pending. If he can show that his letter was a "complaint . . . objecting to discharge,"[44] it might follow that her discharge was entered by mistake.

The letter, which Merrill-Colberg filed on his own, certainly does not expressly state a claim for denial of discharge. On his Adversary Proceeding Cover Sheet, when instructed to identify the nature of his claims, he checked "Recovery of money/property – other" and "Recovery of money/property – § 542 turnover of property."[45] He stated his request for relief in the penultimate paragraph as follows: "I believe the Court should allow Miss Schmunk to Amend to the Proof, by Bank Statements, Court Judgement Documents, and/or Insurance Company Payment Checks." There is nothing in the complaint to suggest that he sought to object to her discharge.

But under the Federal Rules of Civil Procedure, it is the substance and not the form of a complaint that controls. Rule 15, incorporated by Rule 7015, gives parties the right to amend their pleadings to correct formal defects, even to assert new causes of action that relate back to the original pleading, as long as the newly asserted claims "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."[46] The Seventh Circuit accordingly has held that, if a complaint pending at the time of discharge sets out facts that would support a discharge objection, the court can later vacate the discharge and permit the plaintiff to amend the complaint to assert that objection.[47]

Especially because Merrill-Colberg was unrepresented when he filed his letter constituting his initial complaint, I have reviewed it carefully to determine whether any of the facts he alleged in that document would have supported the discharge-objection claims he now asserts. In his letter, he recounted some of his interactions with Schmunk, including his contract with her and his judgment against her. He described her statements that her debt to him was "tied up" in her personal-injury settlement. Finally, he described her testimony at the meeting of creditors, including her statement that she had received a $5,000 settlement in January 2016 and that her lawyer advised her not to pay him. In closing, he commented that her testimony at the meeting of creditors did not "make sense" and that he believed "that the 'Settlement' occurred much earlier than January of 2016 . . .."[48]

Merrill-Colberg now argues that this comment, questioning the accuracy of Schmunk's testimony, should have been interpreted to assert a discharge objection based on a "false oath."[49] A charitable reading of his letter permits the conclusion that he was trying to accuse her of lying under oath about when she received her settlement proceeds. Lying by itself does not support a false-oath claim—the objector must also prove that the lie was material and fraudulent[50]—but,

---

[44] Fed. R. Bankr. P. 4004(a)(1)(B).
[45] Adv. Pro. docket no. 1.
[46] Fed. R. Civ. P. 15(c)(1)(B).
[47] *Disch v. Rasmussen*, 417 F.3d 769 (7th Cir. 2005).
[48] Adv. pro. docket no. 1.
[49] *See* § 727(a)(4)(A).
[50] *In re Retz*, 606 F.3d 1189, 1197 (9th Cir. 2010).

Natalie C. Scott
Alexzander C.J. Adams
March 12, 2018
Page 12

giving an unrepresented plaintiff the benefit of the doubt, one could infer that he was "attempt[ing to] set out"[51] the factual basis of a false-oath objection to discharge.

The problem with that theory is that Schmunk's statement that she received her settlement in January 2016—as the evidence at trial proved and as everyone now agrees—was true. Under Rule 60, that an order was entered by mistake permits, but does not require, vacatur. Here, Merrill-Colberg did not request vacatur until after I had received evidence that the facts stated in his letter were untrue. Although he continues to refer nonspecifically to false oaths that she supposedly made at her creditors' meeting,[52] he has not pointed to anything that she said there that was false. Instead, he now argues that she lied on her schedules and concealed assets before the petition date—claims that do not arise out of any transaction or occurrence discussed in the letter. In short, the section 727(a) claims that the evidence at least arguably supports do not relate back to his original complaint, and the section 727(a) claim that he arguably stated in his letter has no evidentiary support.

Under these circumstances, I conclude that the court did not err by entering Schmunk's discharge, I cannot vacate the discharge, and I cannot consider denial of a discharge already entered.

### D. *Discharge revocation*

Merrill-Colberg asks to amend his complaint to confirm to the proof by asserting a claim the Schmunk's discharge was obtained by fraud and thus should be revoked under section 727(d)(1).

The evidence does not support discharge revocation. The only possible basis for revocation would be Schmunk's hiding of assets in her boyfriend's account. But that act is not in any way connected to her "obtain[ing]" her discharge. Even if hiding assets before the petition date can be considered "fraud," the claim fails for lack of any causal connection between this prepetition act and the later entry of discharge.

### III. Conclusion

The evidence does not support a determination that Merrill-Colberg's claim against Schmunk is for fraud; his claim is thus dischargeable and was discharged by entry of her discharge.

The court did not erroneously enter Schmunk's discharge, so it may not be set aside under Rule 60, and I may not consider Merrill-Colberg's untimely section 727(a) claim.

---

[51] Fed. R. Civ. P. 15(c)(1)(B).
[52] Plaintiff's Closing Brief at 8.

      I will enter judgment for Schmunk.

      Sincerely,

*David W. Hercher*

DAVID W. HERCHER
Bankruptcy Judge